## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DEITRICH SANDERS,

      Petitioner,                     Case Number 2:19-CV-11018
                                        HONORABLE VICTORIA A. ROBERTS
v.                               UNITED STATES DISTRICT JUDGE

KRISTOPHER TASKILA,

      Respondent,

_____/

### OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS*

Deitrich Sanders, ("Petitioner"), confined at the Baraga Maximum Correctional Facility in Baraga, Michigan, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction and sentence for carjacking, M.C.L.A. 750.529a, and felon in possession of a firearm, M.C.L.A. 750.224f.

For the reasons that follow, the petition for writ of habeas corpus is DENIED.

### I. Background

A jury convicted Petitioner in Macomb County Circuit Court. The relevant facts relied upon by the Michigan Court of Appeals are quoted verbatim; they are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F. 3d 410, 413 (6th Cir. 2009):

> At approximately 5:40 a.m., the victim, Cara Jones, walked from her house to the vehicle in her driveway. Jones had already started the vehicle remotely. As Jones opened the driver-side door, defendant walked up and demanded that she hand over her keys and purse. Defendant wore a hoodie with what looked like a mask around his mouth, and he was wielding a gun that

1

resembled an Uzi. Jones complied, and defendant jumped in the driver seat; however, he hit the brake, and because the vehicle was started remotely, it instantly stalled. Defendant fled on foot and was apprehended shortly thereafter.

At trial, Police Detective Steven Dzierzawski testified about three videos of defendant. The first video captured defendant in the back of the police car where he used his left hand to remove a cloth from his pocket and put it down the front of his pants. Dzierzawski opined that defendant likely used the cloth as a mask during the carjacking. The second video captured defendant standing next to the jail toilet. Although defendant's back was to the camera, Dzierzawski believed defendant discarded the cloth in the toilet. The third video was a police interview with defendant. Dzierzawski explained that defendant's demeanor during the interview suggested he was being untruthful during the interview.

*People v. Sanders*, No. 332895, 2017 WL 5615704, at *1 (Mich. Ct. App. Nov. 21, 2017).

The conviction was affirmed. *Id.*, *lv. den*. 501 Mich. 1063, 910 N.W. 2d 271 (2018).

Petitioner filed a petition for writ of habeas corpus; it was held in abeyance to permit Petitioner to exhaust additional claims in the state court. (ECF No. 7).

Petitioner filed a post-conviction motion for relief from judgment; the motion was denied by the trial court. *People v. Sanders,* No. 2015-2095-FC (Macomb Cty.Cir.Ct., Oct. 9, 2019)(ECF No. 16-14).  The Michigan appellate courts denied leave to appeal. *People v. Sanders,* No. 352546 (Mich.Ct.App. May 13, 2020); *lv. den.* 508 Mich. 924, 963 N.W.2d 346 (2021).

The case was reopened; Petitioner was allowed to file an amended petition. (ECF No. 10).

Petitioner seeks habeas relief on the following grounds: (1) trial counsel was ineffective for failing to object to inadmissible opinion evidence and to the prosecutor's

references to facts not in evidence, (2) the prosecutor committed misconduct by allowing the detective to offer an opinion as to Petitioner's guilt, (3) Offense Variable (OV) 10 of the Michigan Sentencing Guidelines was incorrectly scored, (4) trial counsel was ineffective for failing to object to Prior Record Variable (PRV) 2 and OV 1 and 9 of the Michigan Sentencing Guidelines, (5) counsel was ineffective for giving Petitioner inadequate advice about a plea bargain offer, causing Petitioner to reject the offer, (6) Petitioner was identified as a result of suggestive identification procedures; trial counsel was ineffective for failing to object, (7) the court erred in permitting the introduction of Petitioner's non-*Mirandized* statements to police, (8) counsel was ineffective for failing to object to the admission of Petitioner's statements to the police, (9) trial counsel was ineffective for failing to object to prosecutorial misconduct, and (10) appellate counsel was ineffective.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.   "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). [1]

### III. Discussion

Petitioner raises ten claims for relief.  Many of the separate claims involve different allegations of ineffective assistance of appellate or trial counsel.  Several of the other claims are intertwined with the ineffective assistance of counsel claims.  For purposes of judicial clarity and to avoid repeating the standard of review for ineffective assistance of counsel

---

[1] Respondent urges this Court to procedurally default the fourth through tenth claims, since the claims were raised for the first time on post-conviction review and Petitioner failed to show cause and prejudice, as required by M.C.R. 6.508(D)(3), for failing to raise the claims on the appeal of right.  It is unnecessary to address the procedural default issue because the claims are without merit. *See Post v. Bradshaw*, 621 F.3d 406, 426 (6th Cir. 2010); *Brown v. McKee*, 231 F. App'x 469, 477 (6th Cir. 2007) Many of the claims raised by Petitioner in his post-conviction motion are related to, or intertwined, with the claims raised in Petitioner's appeal of right.

4

claims when addressing each separate ineffective assistance of counsel claim, the Court discusses Petitioner's claims together.

A defendant must satisfy a two prong test to establish the denial of the effective assistance of counsel. First, the defendant must show that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, the defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. See *Wong v. Belmontes*, 558 U.S. 15, 27 (2009). The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. See *Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005). [2]

---

[2] To avoid repetition, the Court will not repeat the *Strickland* standard when addressing each of Petitioner's individual ineffective assistance of counsel claims.

1. **Claims # 1, #2 and # 9.  Petitioner was denied a fair trial by prosecutorial misconduct; trial counsel was ineffective for failing to object.**

Petitioner in his first, second, and ninth claims alleges he was denied a fair trial due to prosecutorial misconduct; he claims trial counsel was ineffective for failing to object.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45.  To obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his or her prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012)(quoting *Harrington*, 562 U.S. at 103).  A habeas petitioner must clear a "high bar" in order to prevail on such claims. *Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017).

Petitioner in his first claim alleges that the prosecutor argued facts that were not introduced into evidence when the prosecutor mentioned in summation that a gun was found fifteen feet away from Petitioner.  Petitioner claims that there was no evidence at

trial concerning where the gun was recovered.  Petitioner claims that there was no testimony at trial from Officer Angelari, the officer who recovered the firearm.

It is improper for a prosecutor during opening or closing arguments to bring to the jury any purported facts which have not been, or will not be, introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F. 3d 486, 535 (6th Cir. 2000).

The assistant prosecutors in their appellee brief indicated that Officer Angelari testified at trial, but that the court reporter failed to transcribe his testimony.  The assistant prosecutors requested the transcription of the officer's testimony. (ECF No. 16-15, PageID. 1528-29).  Petitioner's appellate counsel filed a motion to file a supplemental appeal brief; appellate counsel noted that after filing his initial brief, the trial prosecutor informed him that Officer Angelari testified at trial.  Appellate counsel indicated he received a revised transcript with Officer Angelari's testimony.  Appellate counsel sought to file an amended brief to remove the claim involving the previously missing testimony. (*Id.*, PageID. 1500-01).  Petitioner's appellate counsel in a supplemental brief indicated that Officer Angelari testified that he found a gun and magazine in the vicinity a Checkers restaurant, which was near the area where Petitioner was apprehended. (*Id.*, PageID. 1553).  A review of Officer Angelari's testimony shows he did testify about where he recovered the firearm and magazine. (ECF No. 16-9, PageID. 954-67).  Petitioner's claim is without merit.

Petitioner in his second claim argues that the prosecutor committed misconduct by permitting the detective to offer his opinion that Petitioner was guilty.  In his first claim, Petitioner argues that trial counsel was ineffective for failing to object.

Petitioner is not entitled to habeas relief on his claim that Detective Dzierzawski offered improper lay opinion testimony, in violation of M.R.E. 701. It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000). Petitioner is not entitled to habeas relief on his claim that the detective's testimony was impermissible lay opinion testimony. *See Charles v. Thaler*, 629 F. 3d 494, 500 (5th Cir. 2011).

Petitioner is also not entitled to relief on his claim that the detective's opinion testimony was improper because it invaded the province of the jury to determine whether or not Petitioner was guilty.

In *Cooper v. Sowders*, 837 F.2d 284 (6th Cir. 1988), the Sixth Circuit held that it was fundamentally unfair and a violation of due process to permit a detective to testify as an expert witness that all the evidence linked the petitioner, and no one else, to the crime. The Sixth Circuit concluded that "[t]he opinion-testimony had a direct influence on the jury's consideration of petitioner's guilt or innocence." *Id.* at 287.

The Sixth Circuit's holding in *Cooper* does not entitle Petitioner to habeas relief for several reasons.

First, Detective Dzierzawski did not testify as an expert witness at Petitioner's trial. Second, the jury was instructed to judge a police officer's testimony by the same standard

as the testimony of any other witness. (ECF 16-11, PageID. 1286-87).  These two facts alone distinguish Petitioner's case from the situation in *Cooper. See Carter v. Vashaw,* ----- F. Supp. 3d----; 2022 WL 4227214, at * 3 *(*E.D. Mich. Sept. 13, 2022)(citing *Norton v. Boynton,* No. No. 08–13200, 2011 WL 282433, * 8 (E.D. Mich. Jan. 26, 2011)).  Third, "the *Cooper* court owed no deference to the state court decision on these issues," because *Cooper* was decided prior to the adoption of the AEDPA. *Id.,* (quoting *Dorsey v. Banks*, 749 F. Supp. 2d 715, 758 (S.D. Ohio 2010)).  The judge in *Dorsey* indicated that he was "unable to locate a single case decided by the Sixth Circuit Court of Appeals, apart from *Cooper*, where a prosecutor's questioning of a law enforcement officer about the truthfulness of a witness led to the grant of a writ of habeas corpus." *Id.*  Given the lack of holdings by the Supreme Court on the issue of whether a police officer can offer an opinion as to a criminal defendant's guilt or innocence, the Michigan Court of Appeals' rejection of Petitioner's claim was not an unreasonable application of clearly established federal law. *Carter v. Vashaw*, 2022 WL 4227214, at * 4 (citing *Wright v. Van Patten,* 552 U.S. 120, 126 (2008); *Carey v. Musladin,* 549 U.S. 70, 77 (2006)).  Petitioner is not entitled to relief on his second claim.

With respect to Petitioner's first claim, the Michigan Court of Appeals concluded that Petitioner was not prejudiced by counsel's failure to object:

> Ample evidence was provided at trial to prove that defendant was guilty of the charged crimes. Specifically, the victim identified defendant by voice and appearance. Additionally, [Yolanda] Sanders's [3] testimony established that

---

[3] Yolanda Sanders is Petitioner's sister.  She testified that she did not see Petitioner on the night of April 19 going into the morning of April 20, when the crime was committed, nor did she see him for a week and a half prior to the carjacking. (ECF No. 16-8, PageID. 895-899).

defendant lied when he claimed [Yolanda] Sanders was his alibi. Furthermore, after reviewing the video of defendant in the back seat of the police car, a jury could have reasonably concluded that defendant attempted to hide the cloth used to cover his face during the carjacking. After a review of defendant's recorded interview, the jury could reasonably have inferred, based on defendant's evasiveness and deceit, defendant had lied about whether he was at the scene of the crime. The recovered gun, which matched the victim's description, was found at the exact location where defendant acknowledged he first saw the police. Therefore, defendant was not prejudiced, and he has not overcome the presumption that he received the effective assistance of counsel.

*People v. Sanders*, 2017 WL 5615704, at * 3.

The Michigan Court of Appeals reasonably concluded that Petitioner was not prejudiced by counsel's failure to object to Detective Dzierzawski's opinion testimony, even if improper. First, unlike the police officer in the *Cooper* case, Detective Dzierzawski was not offered as an expert witness. Secondly, there was additional evidence of Petitioner's guilt, apart from the detective's testimony. These facts support the Michigan Court of Appeals' rejection of Petitioner's ineffective assistance of counsel claim. *See Mays v. Chandler,* 342 F. App'x. 159, 169-70 (6th Cir. 2009). Petitioner is not entitled to relief on this claim.

In his ninth claim, Petitioner argues that the prosecutor vouched for the victim's credibility.

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral

independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir.1999)(internal citations omitted).  However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence. *Id.*  The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *United States v. Causey*, 834 F.2d 1277, 1283 (6th Cir. 1987).  "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999)(internal citations omitted); *See also Griffin v. Berghuis*, 298 F. Supp. 2d 663, 674-75 (E.D. Mich. 2004).  The Sixth Circuit has never granted habeas relief for improper vouching. *Byrd v. Collins*, 209 F.3d 486, 537 and n. 43 (6th Cir. 2000).  Indeed, "[T]he Supreme Court has never specifically held that a prosecutor's vouching for the credibility of a witness resulted in a denial of due process." *Wilson v. Bell*, 368 F. App'x. 627, 632, n. 3 (6th Cir. 2010).  Even on direct appeal from a federal conviction, the Sixth Circuit has held that to constitute reversible error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey*, 287 F.3d 422, 433 (6th Cir. 2002).

Petitioner points to remarks made by the prosecutor in her closing argument, when she stated that the victim didn't seem like the type of person who would say, "oh yeah, oh yeah, that's him."  The prosecutor also mentioned; "Would she [the victim] have that reaction?"  The prosecutor also made comments about how most women don't know much

about guns. Petitioner claims that this statement was made to bolster the victim's credibility because the victim erroneously identified the gun used during the robbery as being an AK-47.

A prosecutor does not engage in vouching by arguing that the witnesses testified truthfully, when the arguments are based on the evidence and do not reflect a personal belief of the prosecutor. *See United States v. Jackson,* 473 F. 3d 660, 672 (6th Cir. 2007); *See also Cockream v. Jones*, 382 F. App'x. 479, 484-85 (6th Cir. 2010). The prosecutor did not argue that she had any special knowledge about the victims that had not been presented to the jury. There was no improper vouching; the prosecutor did not improperly "assert or imply that [she] drew from anything but [the victim's] trial testimony to argue that she was credible." *Cockream v. Jones*, 382 F. App'x. at 485.

Moreover, Petitioner is not entitled to habeas relief on this claim because the prosecutor's comments were brief and isolated. An isolated instance of vouching does not make a state trial so constitutionally infirm so as to justify federal habeas relief. *See e.g. Joseph v. Coyle,* 469 F. 3d 441, 474 (6th Cir. 2006). Secondly, the prosecutor's remarks did not rise to the level of a due process violation necessary for federal habeas relief, because the sizeable amount of evidence offered by the state against Petitioner made it unlikely that the jury was misled by this brief statement. *See Wilson v. Mitchell,* 250 F. 3d 388, 398 (6th Cir. 2001). Lastly, the jury was instructed that the lawyers' statements and arguments were not evidence. (ECF No. 16-11, Page 1279). This instruction by the court cured any prejudice that may have arisen from any improper vouching. *Byrd v. Collins,* 209 F. 3d at 537.

Petitioner next claims that the prosecutor misrepresented the evidence in her opening and closing arguments by attempting to argue what Petitioner was thinking, when she made comments to the effect of, "No face, no case," i.e.. Petitioner knew there was no case because the perpetrator's face was covered.  The prosecutor argued that the only way Petitioner knew the perpetrator's face was covered was because he was the person who committed the carjacking.  Petitioner also claims that the prosecutor misrepresented the evidence by arguing that Petitioner discarded a mask into a toilet in a cell at the police station, without proof that an actual mask was thrown away.  Petitioner also claims that the prosecutor falsely represented that the victim was able to give a physical description of her assailant.

Misrepresenting facts in evidence by a prosecutor can amount to substantial error because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer,* 228 F. 3d 689, 700 (6th Cir. 2000)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 646 (1974)).  Likewise, it is improper for a prosecutor during opening or closing arguments to bring to the jury any purported facts which have not been, or will not be, introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F. 3d at 535.  However, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Id.*

In the present case, the prosecutor's remarks were not improper because they were based on reasonable inferences from the evidence presented at trial.  Finally, any prosecutorial misconduct in attempting to inject facts that had not been introduced into evidence was also ameliorated by the trial court's instruction that the lawyers' comments

13

and statements were not evidence. *See Hamblin v. Mitchell*, 354 F. 3d 482, 495 (6th Cir. 2003).

Petitioner also claims that the prosecutor committed misconduct by allowing Officer Trombley to offer an opinion that Petitioner was sweating at the time of the officer's encounter with Petitioner, even though it was also raining outside.

A prosecutor "does not commit misconduct by asking questions that elicit inadmissible evidence." *See Dufresne v. Palmer*, 876 F.3d 248, 261 (6th Cir. 2017)(quoting *Key v. Rapelje,* 634 F. App'x 141, 148 (6th Cir. 2015)). Assuming that Officer Trombley's opinion testimony was improper, the prosecutor did not commit misconduct by eliciting it.

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his or her trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001). The prosecutor's remarks that Petitioner complains of in his first and ninth claims did not deprive Petitioner of a fundamentally fair trial; he cannot show that she was prejudiced by counsel's failure to object. *Slagle v. Bagley,* 457 F. 3d 501, 528 (6th Cir. 2006). Petitioner is not entitled to relief on these claims.

**2. Claims # 3 and # 4. The sentencing guidelines/ineffective assistance claims.**

Petitioner in his third claim alleges that the trial judge incorrectly scored OV 10 of the Michigan Sentencing Guidelines. In his fourth claim, Petitioner alleges that trial counsel was ineffective for failing to object to PRV 2 and OVs 1 and 9 of the Michigan

14

Sentencing Guidelines.  Petitioner also claims that trial counsel was ineffective for failing to object to the fourth felony habitual offender enhancement.

State courts are the final arbiters of state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).  Therefore, claims which arise out of a state trial court's sentencing decision are not normally cognizable on federal habeas review, unless the habeas petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *See Vliet v. Renico*, 193 F. Supp. 2d 1010, 1014 (E.D. Mich. 2002).  Thus, a sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is basically a state law claim. *See Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007); *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003). Errors in the application of state sentencing guidelines cannot independently support habeas relief. *See Kissner v. Palmer*, 826 F. 3d 898, 904 (6th Cir. 2016).  Petitioner's claim that the state trial court improperly departed above the correct sentencing guidelines range does not entitle him to habeas relief; such a departure does not violate any of Petitioner's federal due process rights. *Austin v. Jackson*, 213 F. 3d 298, 301 (6th Cir. 2000).  Petitioner is not entitled to relief on his third claim.

Petitioner in his fourth claim alleges that trial counsel was ineffective for failing to object to the scoring of several variables under the Michigan Sentencing Guidelines.

15

The trial court denied Petitioner's claim on post-conviction review. The Michigan appellate courts affirmed the denial of this claim.

This Court "cannot logically grant the writ based on ineffective assistance of counsel without determining that the state court erred in its interpretation of its own law[,]"; this Court rejects Petitioner's ineffective assistance of trial counsel claim. *See Davis v. Straub*, 430 F.3d 281, 291 (6th Cir. 2005). The trial judge and the Michigan appellate courts implicitly found that the sentencing guidelines were correctly scored when rejecting Petitioner's related ineffective assistance of counsel claim; Petitioner is unable to show that he was prejudiced by his trial counsel's purported ineffectiveness in failing to challenge the scoring of his sentencing guidelines. *See e.g. Coleman v. Curtin*, 425 F. App'x. 483, 485 (6th Cir. 2011).

Petitioner also claims that trial counsel was ineffective for failing to object to the fourth felony habitual offender enhancement. Petitioner alleges that at the time of the carjacking, he had only one prior felony conviction.

The carjacking that Petitioner was convicted of occurred on April 20, 2015. On January 1, 2012, Petitioner pleaded guilty, designated as an adult, to first-degree home invasion, larceny of a firearm, and felony-firearm. Petitioner pleaded guilty to carrying a concealed weapon on February 27, 2015, but he failed to appear for sentencing.

M.C.L.A. 769.12(1) requires that a defendant have three prior convictions in order to have his or her sentence enhanced as a fourth habitual offender. Petitioner argues that at the time of his conviction for the carjacking, he had only one pRior conviction. Petitioner, however, had three prior convictions from his 2012 case. Convictions for multiple crimes

16

that are committed during a single criminal transaction count as separate convictions for the purposes of Michigan's habitual offender laws. *See People v. Gardner,* 482 Mich. 41, 68, 753 N.W. 2d 78 (2008). The three prior convictions from Petitioner's 2012 case were sufficient to charge him with being a fourth felony habitual offender in this case. Although Petitioner points to the fact that his sentence for being a fourth habitual offender in his 2012 case was vacated by the Michigan Court of Appeals, with the prosecutor's concurrence, that was because at the time of Petitioner's 2012 case, he had no prior adult convictions which could be used to enhance his sentence. By contrast, Petitioner's 2012 convictions, along with his 2015 conviction for carrying a concealed weapon, could be used to enhance his sentence in this case. There were no viable grounds for challenging the habitual offender charges in this case; trial counsel was not ineffective for failing to challenge the viability of the habitual offender charges. *See e.g. Cummings v. United States,* 84 F. App'x. 603, 605 (6th Cir. 2003). Petitioner is not entitled to relief on his fourth claim.

**3. Claim # 5. Ineffective assistance at the plea bargaining stage.**

Petitioner contends that his trial counsel gave him inaccurate and misleading advice, which caused him to reject a plea offer made by the judge.

The Sixth Amendment right to counsel extends to the plea bargaining process. *Lafler v. Cooper,* 566 U.S. 156, 163 (2012); *Missouri v. Frye,* 566 U.S. 134, 143-44 (2012). Thus, a criminal defendant during plea negotiations is "entitled to the effective assistance of competent counsel." *Lafler,* 566 U.S. at 162 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). In the context of an ineffective assistance of counsel claim involving a defendant having rejected a plea offer from the prosecution, in order to establish that he or

she was prejudiced by counsel's alleged deficiency, the defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court, i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances. The defendant must also show that the court would have accepted its terms, and that the conviction or sentence, or both, would have been less severe than under the judgment and sentence that in fact were imposed. *Id.,* at 164.

"A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available." *Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003)(*Citing United States v. Day*, 969 F. 2d 39, 43 (2d Cir. 1992). However, an attorney's failure to insist that his or her client accept a plea offer even if there is overwhelming evidence of guilty does not amount to constitutionally ineffective assistance. *Id.* at 552. "The decision to plead guilty—first, last, and always—rests with the defendant, not his lawyer. Although the attorney may provide an opinion on the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the ultimate decision of whether to go to trial must be made by the person who will bear the ultimate consequence of a conviction." *Id.*

Petitioner's argument is difficult to understand. The judge offered to sentence Petitioner to 81 to 100 months in prison if he pleaded guilty. Petitioner was facing a

probation violation for his 2012 case out of Wayne County. Petitioner's Wayne County probation officer showed up in Macomb County at the pre-trial hearing where the plea offer was discussed and told counsel and the court that Petitioner was facing 8-10 years on the probation violation. Petitioner claims he did not accept the plea bargain in Macomb County because his Wayne County probation officer informed the court and counsel that the judge in Wayne County was upset with Petitioner and might sentence him to more than 8-10 years in prison. Petitioner was, in fact, initially sentenced to 160-240 months in the Wayne County case, although that sentence was later vacated and he was re-sentenced to 72-120 months. Petitioner appears to argue that defense counsel failed to advise him that an 8-10 year sentence in Wayne County, with credit for time served, most likely would mean a minimum sentence of 4-6 years. Petitioner argues that he did not accept the *Cobbs* offer for 81 months because he believed he would have to do more time than that in Wayne County. Petitioner argues that had counsel properly advised him about the sentencing consequences in Wayne County, Petitioner would have accepted the *Cobbs* agreement.

At a pre-trial hearing on August 27, 2015, the trial judge indicated that he was willing to enter into a *Cobbs* agreement with Petitioner. [4] In exchange for Petitioner's plea of guilty, the judge would sentence Petitioner to 81 to 100 months. The judge indicated that Petitioner was not interested in the offer. Counsel confirmed that fact. Defense

---

[4] In *People v. Cobbs*, 443 Mich. 276, 505 N.W.2d 208 (1993), the Michigan Supreme Court authorized a judge to preliminarily indicate the appropriate length of sentence, but if the defendant subsequently pleads guilty or no-contest and the judge determines that the sentence must exceed the preliminary evaluation, the defendant has an absolute right to withdraw the plea. See M.C.R. 6.310(B)(2)(b); *Wright v. Lafler*, 247 F. App'x. 701, 703, n.1 (6th Cir. 2007).

counsel stated that Petitioner's probation officer from Wayne County, Ms. Wilson, was present at the hearing.  Ms. Wilson informed counsel that Petitioner was looking at 8-10 years in the Wayne County case.  Petitioner's probation officer confirmed that. (ECF No. 16-4, PageID. 526-28).  Petitioner's grandmother, who was in court, stood up and told Petitioner he should "take the six years," i.e., the guilty plea, rather than go to trial, because he was going to lose. (*Id.,* PageID. 532).  Defense counsel noted that any sentence in the Macomb County case could be concurrent or consecutive to the Wayne County case, but counsel would ask for concurrent time. The judge again explained to Petitioner that the sentencing guidelines in this case went up to 270 months, but that the judge was willing to sentence him to 81 months, or 6.75 years. (*Id.*, PageID. 534-35).

At a subsequent pre-trial hearing on October 29, 2015, defense counsel again indicated that there was a *Cobbs* agreement for 81-100 months but that Petitioner was not interested.  He also again mentioned that Petitioner was probably facing 8-10 years on a probation violation in Wayne County. (ECF No. 16-5, PageID. 543).  The prosecutor informed the court that if there was a conviction after trial, she was going to ask for a twenty five year minimum sentence.  She noted that there was a *Cobbs* agreement of 81-100 months that Petitioner "should take advantage of."  Defense counsel indicated that Petitioner understood this. (*Id.*, PageID. 545).

At a subsequent pre-trial hearing on November 16, 2015, defense counsel again put the *Cobbs* agreement on the record and indicated that Petitioner was not interested in pleading guilty.  At that point, the *Cobbs* offer was withdrawn. (ECF No. 16-6, PageID. 554).

In the context of an ineffective assistance of counsel claim involving a defendant having rejected a plea offer from the prosecution, in order to establish that he was prejudiced by counsel's alleged deficiency, the defendant must show that but for the ineffective advice of counsel there is a reasonable probability that defendant would have accepted the plea. *Lafler v. Cooper*, 566 U.S. at 164.  In addition, a court, in determining the remedy for ineffective assistance of counsel relating to defendant's rejection of a plea offer, may take account of a defendant's earlier expressed willingness, or unwillingness, to accept responsibility for his or her action. *Id.* at 171.

The record shows that Petitioner was advised of the terms of the *Cobbs* agreement by the judge, the prosecutor, and defense counsel at several pre-trial hearings.  Petitioner was informed by the prosecutor that she would seek a minimum sentence of 25 years if Petitioner went to trial and lost.  Petitioner's counsel and his Wayne County Probation Officer stated on the record that Petitioner was probably looking at 8-10 years in prison on his probation violation but no one promised that this would be the sentence.  Petitioner never expressed any interest in pleading guilty, even when his own grandmother advised him to accept the offer.  Petitioner was on notice he was looking at a possible twenty five year minimum sentence if convicted; Petitioner failed to offer a convincing argument that he rejected a plea agreement calling for six years, nine months on the minimum sentence because he was afraid he might have to do ten years in prison on his Wayne County case when the plea agreement would have allowed him to avoid a twenty five year minimum sentence following a jury trial conviction.

Petitioner's claim that counsel was ineffective in giving inadequate advice regarding plea negotiations is suspect, in light of the fact that he did not raise this claim on his appeal of right, but raised it only for the first time in his post-conviction motion for relief from judgment. *See e.g. Torres v. MacLaren*, 184 F. Supp. 3d 587, 594 (E.D. Mich. 2016), *rev'd on other grds sub nom. Torres v. Bauman*, 677 F. App'x. 300 (6th Cir. 2017)(petitioner's affidavit that trial counsel was ineffective in advising him to reject plea offer not credible where petitioner did not raise this claim on his direct appeal and did not explain why he did not attempt to raise the claim in his *pro per* application for leave to appeal to the Michigan Supreme Court after his appellate counsel failed to raise the claim before the Michigan Court of Appeals). Petitioner is not entitled to relief on his fifth claim.

### 4. Claim # 6. The suggestive identification/ineffective assistance claim.

Petitioner claims that the identification procedure was unduly suggestive; trial counsel was ineffective for failing to object.

Petitioner argues that he was subjected to an unduly suggestive identification procedure when the police brought the victim to view Petitioner after he had been detained by the police and shortly after the carjacking took place.

Bringing crime victims immediately to the scene of the crime to identify a defendant is not impermissible or a violation of due process. *See Drew v. Parker,* 244 F. App'x. 23, 27-28 (6th Cir. 2007); *U.S. v. Craig,* 198 F. App'x. 459, 466 (6th Cir. 2006); *Bruner v. Perini,* 875 F. 2d 531, 534-35 (6th Cir. 1989); *Stidham v. Wingo,* 482 F. 2d 817, 818-19 (6th Cir. 1973). "Prompt on-the-scene confrontation is actually consistent with good police work." *Craig,* 198 F. App'x. at 466, n. 1 (citing *Valtin v. Hollins*, 248 F. Supp. 2d 311, 318

22

(S.D.N.Y.2003) (quoting *United States ex rel. Cummings v. Zelker*, 455 F. 2d 714, 716 (2d Cir.1972)).  "Police officers should not have to limit themselves to police station line-ups when '[a]n opportunity for a quick, on-the-scene identification arises.'" *Id.* (quoting *United States v. King*, 148 F. 3d 968, 970 (8th Cir. 1998)).  Conducting an on-scene showup is actually "consistent with legitimate law enforcement purposes, such as allowing identification before the suspect has had the opportunity to alter his appearance and permitting the quick release of innocent persons." *Drew,* 244 F. App'x. at 28; *See also Craig,* 198 F. App'x. at 466, n. 1.  In addition, "handcuffs and police custody are necessary incidents of an on-the-scene identification that do not render the pre-trial identification procedure unnecessarily suggestive." *Craig,* 198 F. App'x. at 466, n. 1 (citing *King*, 148 F.3d at 970; *Tobias v. Portuondo*, 367 F.Supp.2d 384, 392 (W.D.N.Y.2004)).  Petitioner is not entitled to habeas relief because the state courts' rejection on post-conviction review of Petitioner's claim that the on-scene identification procedure was unduly suggestive was neither contrary to nor an unreasonable application of clearly established federal law. *Drew,* 244 F. App'x. at 28.

Petitioner claims that the identification procedure was unduly suggestive because the victim only identified him after the police made him repeat the words of the perpetrator.

"The identification of the voice of a person suspected of a crime as the voice of a suspected criminal is admissible evidence." *Alder v. Burt,* 240 F. Supp. 2d 651, 674 (E.D. Mich. 2003)(citing *Stovall v. Denno*, 388 U.S. 293, 295 (1967)). Hence, "[P]ersons in a lineup can be required to speak words or phrases supposedly uttered by the culprit." *See Swicegood v. State of Ala.,* 577 F. 2d 1322, 1327 (5th Cir. 1978)(citing *United States v.*

*Wade,* 388 U.S. 218, 222-23 (1967)).  Requiring Petitioner to speak the words uttered by the perpetrator in this case was not unduly suggestive and did not deprive petitioner of his rights to due process. *See e.g. U.S. v. Beard.* 381 F. 2d 325, 326-28 (6th Cir 1967).

Petitioner failed to show that the identification procedures were unduly suggestive; counsel was not ineffective for failing to move for suppression of the identifications. *See Perkins v. McKee,* 411 F. App'x. 822, 833 (6th Cir. 2011).

Moreover, although defense counsel did not move for the suppression of the victim's in-court identification, counsel questioned the victim extensively about possible problems with her positive identification of Petitioner.  The victim admitted that it was dark outside during the carjacking.  The victim admitted that she did not identify Petitioner after viewing a live line-up with several participants but identified Petitioner after viewing him sitting handcuffed inside a police car.  The victim acknowledged that she could not see the perpetrator's face because he was wearing a mask.  The victim initially did not know the color of the suspect's eyes, but testified at trial they were brown.  The victim could not remember the color of the mask the suspect was wearing.  The victim admitted that when she called 911, she did not know whether the perpetrator was African-American. The victim conceded the entire carjacking incident lasted only 2-3 minutes.  The victim stated that Petitioner's voice, which she heard during the voice identification, sounded lower than the voice of the carjacking suspect.  The victim was unable to see whether the suspect had a mustache.  The victim estimated that only 30-40 seconds elapsed from the time Petitioner grabbed the victim until he began running away from the scene.  The victim admitted that she only got a good look at the suspect as he was running away after the

failed carjacking. The victim estimated she was eleven yards away from Petitioner at this point. The victim could not recall the color of the suspect's pants. (ECF No. 16-8, PageID. 858-69, 873-74). The decision to attack the credibility of the victim's identification of Petitioner through cross-examination was a reasonable trial strategy that defeats Petitioner's ineffective assistance of trial counsel claim. *See Scott v. Elo,* 100 F. App'x. 332, 333-34 (6th Cir. 2004).

### 5. Claims # 6, 7, and 8. The Fifth Amendment/*Miranda*/ineffective assistance of counsel claims.

As part of his sixth claim, Petitioner argues that the police violated his Fifth Amendment right against self-incrimination by forcing him to participate in the on-scene voice identification and utter the words stated by the perpetrator to the victim. In his seventh claim, Petitioner claims his Fifth Amendment rights were violated by the admission of non-*Mirandized* statements to the police. In his eighth claim, Petitioner argues that trial counsel was ineffective for failing to move to suppress these statements.

Requiring a criminal suspect to give a voice exemplar for the purposes of identification does not violate the Fifth Amendment right against self-incrimination, even if the suspect is asked to use the same words used during the commission of the crime. *See United States v. Dionisio*, 410 U.S. 1, 5–6 (1973); *In re Grand Jury Proc., Hellmann*, 756 F.2d 428, 431 (6th Cir. 1985). "It has long been held that the compelled display of identifiable physical characteristics infringes no interest protected by the privilege against compulsory self-incrimination." *Dionisio*, 410 U.S. at 5–6. "Requiring a suspect to reveal the physical manner in which he articulates words, like requiring him to reveal the physical

25

properties of the sound produced by his voice, does not, without more, compel him to provide a 'testimonial' response for purposes of the [Fifth Amendment] privilege." *Pennsylvania v. Muniz*, 496 U.S. 582, 592 (1990)(citation omitted). Nor is voice identification "the type of incriminating information *Miranda* protects." *United States v. Mohammed*, 693 F.3d 192, 197 (D.C. Cir. 2012). Petitioner's right against self-incrimination was not violated by the voice identification procedure, nor were the police required to advise Petitioner of his *Miranda* warnings prior to ordering him to provide a voice exemplar. Petitioner is not entitled to relief on this portion of his sixth claim.

Petitioner in his seventh claim alleges that his statements to the police prior to his *Miranda* warnings being given were inadmissible. In his eighth claim, Petitioner claims that the *Miranda* warnings given by Detective Dzierzawski did not render his statements voluntary. Petitioner also claims that trial counsel was ineffective for failing to move for the suppression of his statements.

A prosecutor may not use a defendant's statements which stem from custodial interrogation unless the prosecutor can demonstrate the use of procedural safeguards which are effective to secure a defendant's privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Unless other means are devised to inform a suspect of his right to silence and a "continuous opportunity to exercise it," the following warnings are required to be given to a suspect:

1. the person must be warned that he has a right to remain silent;
2. that any statement he does make may be used against him;
3. and that he has a right to the presence of an attorney, either appointed or retained.

*Miranda*, 384 U.S. at 444.

26

Petitioner initially points to statements made to Roseville Police Officer Joseph Trombley. Petitioner was stopped by Officer Trombley while he was walking down the street. Petitioner alleges that Officer Trombley exited his patrol vehicle with his weapon drawn and ordered Petitioner to show his hands. Petitioner complied. Officer Trombley asked Petitioner his whereabouts. Petitioner allegedly told Officer Trombley that he was coming from a friend's house on Martin Street. Petitioner actually claims that Officer Trombley's statement was untrue; Petitioner claims he told Officer Trombley he was going to babysit and was in a hurry to get there. Officer Trombley told Petitioner that there had been an attempted carjacking a few moments earlier and that he fit the description of the suspect. At that point, Officer Trombley placed Petitioner in his squad car.

The Court reviewed Officer Trombley's testimony. Officer Trombley testified that police dispatch put out a call that there had been a carjacking in the area of Ten Mile Road and Gratiot Avenue and that the victim was chasing the suspect. Dispatch gave a description of the suspect and advised that he was armed with a gun. Officer Trombley noted Petitioner, who fit the description of the carjacking suspect. Officer Trombley observed Petitioner less than seven minutes after the call came in. Petitioner appeared to be sweating. When Officer Trombley spoke to Petitioner, he appeared out of breath. Petitioner informed Officer Trombley that he was coming from a friend's house on Martin Street. Significantly, Officer Trombley never testified to drawing his weapon on Petitioner, (ECF No. 16-10, PageID. 1087-1104), although he did mention it in his police report. (ECF No. 16-13, PageID. 1422-23).

27

Police officers are not required to administer *Miranda* warnings to every person whom they question nor are they required to administer *Miranda* warnings simply because the questioned person is one whom the police suspect. *Oregon v. Mathiason,* 429 U.S. 492, 495 (1977). Instead, *Miranda* warnings are required "only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Id.* Moreover, general on-the-scene questioning by the police as to the facts surrounding a crime or other general questioning of citizens by the police in the fact-finding process does not require *Miranda* warnings. *Miranda,* 384 U.S. at 477-78. Such questioning enables an officer "to determine whether a crime has been committed or is in progress." *Lowe v. United States*, 407 F.2d 1391, 1393-94 (9th Cir. 1969).

In *Terry v. Ohio*, 392 U.S. 1, 10 (1968), the Supreme Court held that "the police should be allowed to 'stop' a person and detain him briefly for questioning upon suspicion that he may be connected with criminal activity." *Id.* at 10. "[I]n justifying the intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21.

The Supreme Court held that the "temporary and relatively nonthreatening detention involved in a traffic stop or *Terry* stop does not constitute *Miranda* custody[,]." *Howes v. Fields*, 565 U.S. 499, 510 (2012)(quoting *Maryland v. Shatzer*, 559 U.S. 98, 113 (2010)). Petitioner was not in custody when he was initially detained by Officer Trombley; it was unnecessary for Officer Trombley to administer *Miranda* warnings prior to speaking with Petitioner.

28

Without any significant evidence suggesting that Petitioner was subjected to custodial interrogation within the meaning of *Miranda* during his initial encounter with the police in the basement, "a fairminded jurist could conclude that counsel acted reasonably in choosing not to move for suppression" of Petitioner's statement to Officer Trombley. *See Wilkens v. Lafler*, 487 F. App'x. 983, 993 (6th Cir. 2012). Moreover, Petitioner is unable to show that he was prejudiced by counsel's alleged ineffectiveness, "because, even if his counsel had filed the motion to suppress, the trial court would have almost certainly denied it as meritless." *Id.* at 994.

Petitioner's initial statement to Officer Trombley was also most likely admissible under the "public safety" exception to the *Miranda* rule, in which a police officer is not required to advise a person of his or her *Miranda* rights if the officer asks questions that are "reasonably prompted by a concern for the public safety." *See New York v. Quarles*, 467 U.S. 649, 656 (1984). In order for a police officer to have a reasonable belief that he is in danger, so as to support *Miranda's* public safety exception, the officer, at a minimum, must have reason to believe, with no other context-specific evidence to rebut the inference, that: (1) the defendant might have, or recently have had, weapon, and (2) someone other than police might gain access to that weapon and inflict harm with it. *United States v. Williams,* 483 F.3d 425, 428 (6th Cir. 2007). Officer Trombley clearly had reason to believe that Petitioner might have or recently have had a weapon, and that another person other than the police might obtain the weapon and inflict harm with it. Petitioner's un-*Mirandized* response to Officer Trombley's questions were most likely admissible under *Quarles*. *See Hart v. Steward*, 623 F. App'x. 739, 746 (6th Cir. 2015).

Petitioner claims that after being placed in Officer Trombley's patrol car, other officers arrived and began asking him questions. At this point, Petitioner was in custody and should have been advised his *Miranda* rights. Although Petitioner claims he made additional statements to these officers, Petitioner fails to identify any statements to these officers which were admitted into evidence. Absent any showing that these statements were admitted into evidence, there was no *Miranda* violation.

In his eighth claim, Petitioner alleges that his statements to Detective Dzierzawski following his arrest should have been suppressed because the detective's interrogation of Petitioner was a continuation of the earlier non-*Mirandized* questioning by the officers at the time of Petitioner's arrest.

The Supreme Court in *Seibert* held that a midstream recitation of *Miranda* warnings, after a police interrogation commenced without first advising the defendant of his rights, did not comply with *Miranda's* constitutional requirement, thus, any statement made by a defendant after being given *Miranda* warnings in the middle of an interrogation is inadmissible. *Missouri v. Seibert,* 542 U.S. 600, 604-06 (2004). *Seibert* is inapplicable to Petitioner's case; he was advised of his *Miranda* rights prior to any custodial interrogation. *See United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1130 (9th Cir.), *amended*, 416 F.3d 939 (9th Cir. 2005).

Based on the foregoing, there was no reasonable probability that a motion to suppress based on an alleged *Miranda* violation by Detective Dzierzawski would have succeeded in this case; trial counsel was not ineffective for failing to move for the

suppression of his statement to the detective. *See Koras v. Robinson,* 123 F. App'x. 207, 210-12 (6th Cir. 2005).

### 6.  Claim # 10.  The ineffective assistance of appellate counsel claim.

Petitioner argues that appellate counsel was ineffective for failing to raise his fourth through ninth claims on his appeal of right.

The Sixth Amendment guarantees a defendant the right to the effective assistance of appellate counsel on an appeal of right. *See Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985).  Nonetheless, court appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  A habeas court reviewing an ineffective assistance of appellate counsel claim must defer twice: first to appellate counsel's decision not to raise an issue and secondly, to the state court's determination that appellate counsel was not ineffective. *Woods v. Etherton*, 578 U.S. 113, 119 (2016)(per curiam).

"[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  Petitioner's fourth through ninth claims are meritless; appellate counsel was not ineffective for failing to raise them on the appeal of right.

### IV.  Conclusion

The Court denies the petition for writ of habeas corpus.  The Court also denies a certificate of appealability to Petitioner.  To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. §

2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court denies Petitioner a certificate of appealability; he failed to make a substantial showing of the denial of a federal constitutional right. *See Siebert v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002). However, although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## V. ORDER

**The Court DENIES** the Petition for Writ of Habeas Corpus and a Certificate of Appealability**.**

Petitioner is **GRANTED** leave to appeal *in forma pauperis.*

s/ Victoria A. Roberts
**HON. VICTORIA A. ROBERTS**
Dated: 2/2/2023        **UNITED STATES DISTRICT JUDGE**